UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12244-GAO

RAM MANAGEMENT CO., LLC, f/k/a/ RAM MANAGEMENT CO., INC., and
RAM OPPORTUNITY FUND 1, LLC,
Plaintiffs,

v.

FIRST HIGHLAND MANAGEMENT AND DEVELOPMENT CORP., HIGHLAND
SOUTHBRIDGE ASSOCIATES LIMITED PARTNERSHIP, L.P., and HIGHLAND
SOUTHBRIDGE CORPORATION,
Defendants.

OPINION AND ORDER
September 30, 2013

O'TOOLE, D.J.

**I.      Background**

This dispute arises from negotiations for the sale of commercial property by the defendants (collectively "Highland") to plaintiff RAM Management. According to the complaint, Highland discovered serious hazardous waste contamination on the property in July 2010 but failed to disclose this to RAM Management during their negotiations.

The complaint alleges two separate misrepresentations by Highland. First, Highland put negotiations on hold in September 2010 because of what it described as "construction problems." The plaintiffs allege that Highland did not disclose the true reason for the delay, which was hazardous waste contamination, and had that been disclosed, the plaintiffs would have discontinued negotiations and pursued other options. Instead, the plaintiffs say, they wastefully continued negotiations with Highland.

Second, the parties eventually entered into a purchase and sale agreement on June 24, 2011, which contained the allegedly false representation that:

> [t]o Seller's knowledge, Seller has not received any notice of any pending or threatened claims, complaints, notices, correspondence or requests for information received by Seller with respect to, any violation or alleged violation of any Environmental Law . . . caused by Seller's actions, any releases of Hazardous Substances . . . by Seller or with respect to any corrective or remedial action for, or cleanup of, the Land, the Improvements or any portion thereof resulting from an event caused by Seller.

(Agreement § 8.1.4 (dkt. no. 10).) The Agreement also contained a merger clause, indicating that:

> PURCHASER IS <u>NOT</u> RELYING ON . . . ANY REPRESENTATIONS OR WARRANTIES MADE BY OR ON BEHALF OF SELLER OF ANY KIND OR NATURE WHATSOEVER, EXCEPT FOR THOSE PARTICULAR REPRESENTATIONS AND WARRANTIES EXPRESSLY PROVIDED IN THIS AGREEMENT.

(Agreement § 11.2 (dkt. no. 10).)

At some point after the Agreement but prior to closing, RAM Management discovered that the property was contaminated, and it terminated the Agreement on October 3, 2011. The plaintiffs filed this action on December 4, 2012, bringing claims of misrepresentation, fraudulent inducement, breach of contract, and violation of Mass. Gen. Laws Ch. 93A. Highland moves to dismiss the Complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II. Discussion

### A. Agreement Terms

Highland contends that all of the claims are barred by the terms of the Agreement. Under Section 8.4,

> if any Seller Representation is untrue or inaccurate in any material respect and Purchaser becomes aware of such untruth or inaccuracy prior to Closing,

>Purchaser may elect, in its sole discretion and as its sole remedy hereunder, at law or in equity except as otherwise expressly provided in **Section 17.1**, either to (i) terminate this Agreement by delivery of written notice to Seller on or prior to Closing . . . whereupon the Deposit shall be promptly returned to Purchaser, and neither party shall have any further liability hereunder, except for those liabilities that expressly survive a termination of this Agreement; or (ii) proceed to Closing and accept the untruth or inaccuracy of such Seller Representation with no further right to terminate the Agreement (or pursue any other right or remedy) on the basis of the untruth or inaccuracy thereof.

(Agreement § 8.4 (dkt. no. 10).)

Section 17.1 outlines the remedies available to the Purchaser in case of a default by the Seller.

>[I]n the event of the untruth or inaccuracy, in any material respect, of any Seller Representation as of the Contract Date or as of the Closing Date (subject to the limitations contained in **Sections 8.3** and **12.19**, Purchaser's sole remedy hereunder, at law or in equity, shall be to terminate this Agreement by delivery of written notice to Seller on or prior to Closing . . . in which event the Deposit shall immediately be returned to Purchaser, and neither party shall have any further liability hereunder except for those liabilities that expressly survive a termination of this Agreement.

(Agreement § 17.1 (dkt. no. 11).)

>[I]n the event that, as a result of the **willful misconduct** of Seller (or in the case of a breach of a Seller Representation, **the deliberate and knowing misrepresentation by Seller of a Seller Representation**) or an action of Seller taken with the express purpose of frustrating the purposes of this Agreement, (i) any Seller Representation is breached in any material respect; (ii) any condition precedent to Purchaser's obligation fails, or (iii) Seller fails to perform any covenant or agreement hereunder in default of its obligations hereunder, then Purchaser shall have the right at its option to either: (A) terminate this Agreement, in which case the Deposit shall immediately be returned to Purchaser and Seller shall reimburse Purchaser for all Purchaser's Transaction Costs paid or incurred by Purchaser up to a maximum, aggregate amount not to exceed Fifty Thousand and No/100 Dollars ($50,000.00), promptly, and in any event within ten (10) days, after the presentation of invoices for such costs, or (B) file an action for specific performance and Seller shall reimburse Purchaser for all out-of-pocket costs incurred by Purchaser in connection with such action, including without limitation, court costs and reasonable attorneys fees and expenses.

(Id. (emphasis added).)

The terms of the Agreement as set forth are unambiguous, contrary to the plaintiffs' contentions. Further, the parties here are "sophisticated business entities who, represented by attorneys, freely entered into a contract," and it is only appropriate to hold them to their bargained-for and agreed-upon terms. Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 107 (D. Mass. 1998).

### B. Alleged Misrepresentations in Agreement

The plaintiffs allege that Section 8.1.4 contained deliberate and knowing misstatements. Under the Agreement, however, the plaintiffs' remedies are limited to termination of the Agreement and reimbursement of Transaction Costs of up to $50,000. (Agreement § 17.1.) Section 8.3, which the plaintiffs contend provides separate remedies and avers that Seller Representations "survive the Closing Date," is wholly inapposite because claims under this section are only actionable if the breach "was not disclosed to, or known by, Purchaser prior to Closing." (Agreement § 8.3 (dkt. no. 10).) Here, the plaintiffs discovered the breach prior to the closing date, and they chose to exercise their right of termination.

The plaintiffs are barred from bringing any claims arising from Highland's second alleged misrepresentation in the form of Seller Representation 8.1.4.

The breach of contract claim, which is based solely on Highland's representations in Section 8.1.4, must be dismissed in its entirety. The other claims, for misrepresentation, fraudulent inducement, and violation of Chapter 93A, are likewise dismissed to the extent that they are based on the Agreement.

### C. Alleged Misrepresentations in Pre-Agreement Negotiations

The plaintiffs further allege that by representing (apart from the Agreement) that its decision to postpone negotiations in September 2010 was due to "construction problems,"

Highland misled the plaintiffs and denied them an opportunity to walk away and seek other options. The plaintiffs in essence seek recovery of transaction costs, because "[h]ad Defendants accurately stated the facts that existed at the Premises, Plaintiffs would not have spent the time, money and effort necessary to negotiate and finalize the Agreement." (Pls.' Opp'n to Mot. to Dismiss at 15 (dkt. no. 24).)

Highland argues that the plaintiffs fail to state a claim for negligent misrepresentation because it made no affirmative misrepresentations and had no duty to volunteer any environmental issues during the negotiation period. In Massachusetts, sellers in an arm's length transaction are not liable for "failing to disclose every latent defect known to them which reduces materially the value of the property and of which the buyer is ignorant." Nei v. Burley, 446 N.E.2d 674, 676 (Mass. 1983). Mere non-disclosure during negotiations is not actionable. Id.

However, "a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 414 (1st Cir. 1985) (citing Restatement (Second) of Torts § 551(2)(b) ("One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading.")). There must be "enough . . . done affirmatively to make the disclosure inadequate and partial, and in the circumstances, intentionally deceptive and fraudulent." Kannavos v. Annino, 247 N.E.2d 708, 712 (Mass. 1969).

In this case, even when taking the plaintiffs' allegations as true, Highland's limited reference to "construction problems" did not amount to a sufficiently affirmative representation that it called for a further, "complete" disclosure. Cases where such a duty has been found

involve more substantial initial affirmative disclosures. See, e.g., id. at 712-13 (seller had duty to fully disclose zoning violations where express assertion was made to buyer that apartment buildings could continue to operate as multi-dwelling property); AT&T Corp. v. Stockard, 2006 WL 6491253, at *12 (D. Mass. Apr. 24, 2006) (defendants' voluntary decision to share information about financial conditions created a duty to avoid making material omissions when doing so).

But even if the allegations here were sufficient to allege an actionable partial disclosure, the plaintiffs provide no legal support for their position that they can recover for transaction costs and lost opportunity costs with regard to a deal they avoided. According to the plaintiffs, misrepresentations made during business negotiations give rise to an actionable tort claim, even in the absence of any consummated transaction, but they fail to cite any authority in support of that proposition. The plaintiffs' assertion of a cause of action akin to fraudulent inducement of fruitless negotiations, while creative, is not supported by case law or general principles of tort or contract. Further, the parties, represented by counsel, did in fact enter into an agreement, which specifically provides for the reimbursement of the purchaser's transaction costs up to $50,000 in the event that the seller breaches its obligations by way of willful malfeasance. (Agreement § 17.1.)

Finally, to the extent that the plaintiffs' claims could be construed as seeking the agreed sum of $50,000, the claim is below what is required for the existence of diversity jurisdiction. 28 U.S.C. § 1332(a).

The misrepresentation, fraudulent inducement, and Chapter 93A claims are dismissed to the extent that they arise from alleged misrepresentations made during negotiations.

## III.    Conclusion

For the foregoing reasons, Highland's Motion (dkt. no. 8) to Dismiss is GRANTED in its entirety. The Complaint is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge